1   WO

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                        FOR THE DISTRICT OF ARIZONA

8

9   Theresa Cameron,                    )    No. cv-08-1490-PHX-ROS
                                        )
10           Plaintiff,                  )    **ORDER**
                                        )
11   vs.                                 )
                                        )
12                                       )
    Arizona Board of Regents, et al.,   )
13                                       )
             Defendants.                 )
14                                       )
                                        )
15   _____)

16          Pending before the Court is Defendants' Motion to Dismiss (Doc. 44).  Plaintiff, Dr.

17   Theresa Cameron, formerly a tenured professor at Arizona State University ("ASU"), alleges

18   that her dismissal was in violation of her Equal Protection and Due Process Rights, the

19   Rehabilitation Act, 29 U.S.C. § 794, and 42 U.S.C. §§ 1981, 1983 and 1985.  For the reasons

20   stated herein, Defendant's Motion will be granted in part and denied in part.

21                                I.  BACKGROUND

22          Plaintiff, an African-American woman, was hired in 1997 as an assistant professor at

23   ASU's School of Planning and Landscape Architecture.  In 2000, she was promoted to

24   "associate professor" and granted tenure.  In 2004, Plaintiff took a medical leave of absence

25   after being diagnosed with depression; she returned to work in March of 2005.  Plaintiff

26   alleges that her requests for reasonable accommodations – scheduling her classes between

27   10 a.m. and 3 p.m. to compensate for medication-related fatigue – were ignored by the

28   university.

In February of 2006, Plaintiff was removed as the instructor of a course she was teaching after being told students had expressed concerns about her class structure and preparedness. Later that year, Plaintiff was notified that she would undergo a post-tenure review; that process was never completed and Plaintiff filed a grievance due to the university's failure to do so.

On September 7, 2007, Plaintiff received a notice of dismissal alleging that she had failed to follow University protocol for obtaining student evaluations, had engaged in retaliatory conduct against two students enrolled in one of her classes, and had plagiarized course syllabi.

Plaintiff received the notice of dismissal from Defendant Michael Crow, ASU's President. She then appealed the decision and a hearing was held before the University Faculty Senate's Committee on Academic Freedom and Tenure ("CAFT"). In that hearing, the University was required to establish by a preponderance of the evidence that just cause existed for Plaintiff's dismissal. At the hearing, Plaintiff attempted to introduce an expert witness to testify as to the plagiarism charge. CAFT excluded his testimony on the ground that "his proposed testimony [did] not appear to be relevant to the issues before the committee." Plaintiff's Ex. 3. CAFT found no support in the record for the charge of improper administration of teaching evaluations and found that the charge of retaliatory conduct toward students was likewise unmerited. However, it also found that it was "uncontroverted at the hearing that Dr. Cameron plagiarized course syllabi as alleged by the Administration," and that "[p]lagiarism has been recognized by the [Arizona Board of Regents] Policies as constituting good cause for the dismissal of a tenured professor." CAFT concluded that

> although CAFT certainly condemns plagiarism in any form, because the acts of plagiarism by Dr. Cameron focused solely on course syllabi, and because Dr. Cameron appears to have committed such acts mainly due to poor judgment after return to the University from extended medical leave – rather than an intent to harm other academics by appropriating their work – CAFT believes that Dr. Cameron's mistakes would have best been addressed through the mandatory enhanced post-tenure review process or through an

improvement plan which specifically addressed any deficiencies in Dr. Cameron's syllabi.

Plaintiff's Ex. 4.  Arizona Board of Regents ("ABOR") policy provides that "upon receipt and review of the hearing committee recommendation, the university president shall approve, disapprove or modify the committee recommendation . . . . The president shall not be bound by the recommendation of the committee."

Dr. Cameron requested that President Crow reconsider his decision; on August 12, 2007, he issued a nine-page decision denying reconsideration, terminating Plaintiff's employment, and advising Plaintiff that her dismissal could be appealed to Maricopa County Superior Court.  In that report, he stated:

> Dr. Cameron's conduct violates the very basic and essential responsibilities of her position as a tenured faculty member in regard to teaching and students, scholarship, colleagues, and the University.  Dr. Cameron failed: (1) to demonstrate intellectual honesty, (2) to foster honest academic conduct, (3) to use the creative achievements of colleagues with appropriate consultation and credit, and (4) to adhere to University policies and regulations.  Dr. Cameron's repeated conduct is egregious.

Defendant's Exhibit D.  Plaintiff filed that an appeal with the Maricopa County Superior Court on September 15, 2008.

## II.  STANDARD OF REVIEW

The Federal Rules require only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ P. 8(a)(2).  "Specific facts are not necessary; the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests."  Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007) (internal citations and quotations omitted).  Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a party to assert by motion that Plaintiff has "fail[ed] to state a claim upon which relief can be granted."  "[F]or purposes of the motion to dismiss, (1) the complaint is construed in the light most favorable to the plaintiff, (2) its allegations are taken as true, and (3) all reasonable inferences that can be drawn from the pleading are drawn in favor of the pleading."  Wright & Miller, Federal Practice and Procedure §1357 (2008).  Recent jurisprudence has implied, however, that a reasonable level of detail is required; "a plaintiff's obligation to provide the ground of

1  his entitlement to relief requires more than labels and conclusions, and a formulaic recitation

2  of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544,

3  ____, 127 S. Ct. 1955, 1964-65 (2007) (internal citations and quotations omitted). "Implicit

4  in this passage is the notion that the rules do contemplate a statement of circumstances,

5  occurrences, and events in support of the claim being presented." Wright & Miller, Federal

6  Practice and Procedure §1215 (2008).

7                                III. ANALYSIS

8      A.  Plaintiff's §§ 1981, 1983, and 1985 Claims Against ABOR Will Be Dismissed.

9          Defendants argue that Plaintiff's §§ 1981, 1983, and 1985 claims against ABOR are

10  barred by the Eleventh Amendment.  Plaintiff responds that she seeks only declaratory and

11  prospective relief against ABOR.  Defendant replies that the parties already stipulated to

12  dismiss all claims for prospective and injunctive relief.

13          That Stipulation indeed reads that "to the extent that Plaintiff's Complaint can be

14  construed to allege claims against the Arizona Board of Regents under Section 1981, 1983,

15  or 1985, those claims shall be dismissed." Accordingly, this Court does not need to consider

16  the question of sovereign immunity.

17      B.  Plaintiff's Claims Under the Rehabilitation Act Are Not Time Barred.

18          Defendants argue that Plaintiff's claims under the Rehabilitation Act are time barred

19  because they accrued more than two years ago.  The statute of limitations for a cause of

20  action under the Rehabilitation Act is provided by the analogous state law. Douglas v. Cal.

21  Dep't of Youth Auth., 271 F.3d 812, 823 (9th Cir. 2001).  All parties agree that Arizona's

22  two-year statute of limitations period for personal injury claims applies.    A.R.S. § 12-542;

23  Douglas, 271 F.3d at 823, n. 11.

24          "The continuing violations doctrine extends the accrual of a claim if a continuing

25  system of discrimination violates an individual's rights 'up to a point in time that falls within

26  the applicable limitations period.'" Douglas, 271 F.3d at 822 (citing  Williams v. Owens-

27  Illinois, Inc., 665 F.2d 918, 924 (9th Cir. 1982)).  The Ninth Circuit has recognized two

28  methods by which a plaintiff may establish a continuing violation: by pointing to a series of

1  related acts against an individual or by showing "a systematic policy or practice of

2  discrimination that occurred outside the statute of limitations period because they were

3  sufficiently related to later, timely incidents of discrimination." Id.; Morgan v. Nat'l RR

4  Passenger Corp., 232 F.3d 1008 (9th Cir. 2000); Sosa v. Hiraoka, 920 F.2d 1451, 1455 (9th

5  Cir. 1990).  For instance, a plaintiff had a valid claim when she alleged the existence of

6  "widespread policy and practices of discrimination . . . which she complained continued

7  every day of her employment, including days that fall within the limitations period."

8  Gutowsky v. County of Placer, 108 F.3d 256, 260 (9th Cir. 2001).  That said, "[m]ere

9  requests to reconsider . . . cannot extend the limitations periods applicable to the civil rights

10  law." Del. State College v. Ricks, 449 U.S. 250, 261 n. 15 (1980).

11         Here, Plaintiff alleges that she made requests for reasonable accommodation at the

12  beginning of each academic semester.  Because these requests concerned the scheduling of

13  her classes (as well as the provision of computer equipment), this constitutes something more

14  than a mere request for reconsideration.  Rather, each instance of a class being scheduled is

15  a potential new violation.

16         This is consistent with the precedent cited by Defendants, which notes that claims

17  based on discrete acts are only timely where such acts occurred within the limitations

18  period;" they are not actionable "if time barred, even when they are related to acts alleged

19  in timely filed charges." Cherosky v. Henderson, 330 F.3d 1243, 1246 (9th Cir. 2003) (citing

20  National Railway Passenger Corp. v. Morgan, 536 U.S. 101, 119, 122 (2002)).  In Morgan,

21  the Court rejected the concept of a "serial violation."  "[E]ach discrete discriminatory act

22  starts a new clock for filing charges alleging that act."  536 U.S. at 122.   This doctrine

23  differentiates the circumstances here from those found in Elmenayer v. ABF Freight Sys.,

24  318 F.3d 130.  In that case, the Court found that "an employer's rejection of an employee's

25  proposed accommodation for religious practices does not give rise to a continuing violation,"

26  but is a discrete act.  318 F.3d 140 at 134-35 (2d Cir. 2003).  Here, however, Plaintiff alleges

27  a number of discrete acts – scheduling and use of special computer equipment for her classes

28

each semester – which occurred within the limitations period.  Her cause of action for those incidences occurring within the statute of limitation period stand.

She may not, however, bring a claim for previous incidences of discrimination which occurred outside it.  Further, if discovery should demonstrate that Plaintiff did not, in fact, make a new request regarding scheduling or use of special computer equipment as regarding her new classes each semester, at that stage it may be appropriate to determine her claims barred by the statute of limitations.  As Defendants note, Plaintiff's claim that ASU unlawfully required her to undergo an independent medical exam in 2005 is outside the statute of limitations period and therefore time-barred.

C. Plaintiff Has Stated a Cognizable Claim Against Individual Defendants Under §§ 1981 and 1983 Regarding the Grievance and Termination Hearings.

Defendants argue that Plaintiff's claims for violation of §§ 1981 and 1983 by the Individual Defendants must be dismissed because, in actuality, CAFT made each decision objected to rather than the Defendants itself.  In particular, Defendants argue that CAFT determined the date of the termination hearing that was allegedly not within the required time limits, CAFT required the University to prove just cause for her termination by a preponderance of evidence, allegedly a stricter burden than required, and CAFT denied Plaintiff's attempt to call an expert witness.  None of the Individual Defendants have been alleged to be members of the CAFT panel or to have instructed CAFT to make those determinations.  Plaintiff argues that university policy made Defendants responsible for overseeing the smooth functioning of the grievance hearing process.  Defendant responds that § 1981 and 1983 liability cannot be imposed on a theory of *respondeat superior*.  See Fed'n of African Am. Contractors v. Oakland, 96 F.3d 1204, 1214-15 (9th Cir. 1996).

In their briefing, Defendants fail to distinguish between *respondeat superior* and supervisor liability, a valid claim for which can be made out.  "A supervisor is only liable for the constitutional violations of . . . subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them."  Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).  Accordingly, Nevada's Attorney general who was not

1    directly responsible for the criminal charges against the defendant nor "directed, participated

2    in, or had any knowledge of any alleged misconduct on the part of" subordinates could be

3    held liable.  Id.

4            More broadly, the "requisite causal connections [to deprive another of a constitutional

5    right] can be established not only by some direct personal participation in the deprivation,

6    but also by setting in motion a series of acts by others which the actor knows or reasonably

7    should know would cause others to inflict the constitutional injury."  Johnson v. Duffy, 588

8    F.2d 740, 743 (9th Cir. 1978).  Prior to discovery, of course, "Plaintiffs' need not specifically

9    delineate how each Defendant contributed to the violation of their constitutional rights."

10   Hydrick v. Hunter, 500 F.3d 978, 988 (9th Cir. 2007); see also, Preschooler II v. Clerk

11   County Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) ("At this early stage of the

12   proceedings, Preschooler II does not need to show with great specificity how each defendant

13   contributed to the violation of his constitutional rights.  Rather, he must state the allegations

14   generally so as to provide notice to the defendants and alert the court as to what conduct

15   violated clearly established law.")

16           Plaintiff's Complaint alleges that:

17           57.  Defendants Crow, Reiter, Brooks, and Dandekar also denied Plaintiff to
             the opportunity [sic] to present evidence in her support and to refute the
18           University's claims of alleged plagiarism by excluding Plaintiff's expert
             witness, Daniel Wueste, Ph.D, from testifying on Plaintiff's behalf at the
19           hearing before CAFT.

20   She adds:

21           65.  Acting under the color of law, Defendants Crow, Reiter, Brooks and
             Dandekar denied Plaintiff a full and fair hearing on her grievance that
22           Defendants failed to follow the post-tenure review process and on Plaintiff's
             request for a name-clearing hearing by denying her the opportunity to present
23           important witnesses in her defense.

24   Plaintiff further adds to the veracity of her argument by discussing, in her Response, the

25   ABOR and ASU policies that contemplate a role for each of the Defendants in the post-

26   tenure review process, a discussion that goes unaddressed by Defendants.  Combined with

27   the specific allegations of involvement in the Complaint, this is sufficient to survive a Motion

28

1   to Dismiss on the Pleadings; Plaintiff needs not yet have presented specific facts or evidence

2   detailing the extent or means of this involvement.

3                   D.  Plaintiff Does Not Plead a Valid Liberty Interest Claim.

4              "When the government dismisses an individual for reasons that might seriously

5   damage his standing in the community, he is entitled to notice and a hearing to clear his

6   name."  Bollow v. Federal Reserve Bank of San Francisco, 650 F.2d 1093, 1199 (9th Cir.

7   1981) (cited by Portman v. County of Santa Clara, 995 F.2d 898, 907 (9th Cir. 1993).  "To

8   implicate constitutional liberty interests, however, the reasons for dismissal must be

9   sufficiently serious to 'stigmatize' or otherwise burden the individual so that he is  not able

10  to take advantage of other employment opportunities."  Id. at 1101. Both parties agree that

11  an essential element of a liberty interest claim is the publication of false information about

12  the dismissed.  It comes into play only if:

13          (1) the accuracy of the charge is contested;
            (2) there is some public disclosure of the charge; and
14          (3) the charge is made in connection with termination of employment.
    Matthews v. Harney County, 819 F.2d 889, 891-92 (9th Cir. 1987).

15
            Plaintiff disputes the accuracy of the charges against her – e.g., that she plagiarized
16
    a course syllabus – and they were clearly made in connection with termination of
17
    employment.  Defendants contend that she has not made any allegations that the Individual
18
    Defendants made a public disclosure of the charge.  Plaintiff responds that "[t]his is a fact
19
    question that is inappropriately raised by Defendant by way of a motion to dismiss." This,
20
    of course, is not the case.  To survive the Motion to Dismiss stage, "[s]pecific facts are not
21
    necessary; the statement need only give the defendant fair notice of what the claim is and the
22
    grounds upon which it rests."  Erickson, 127 S. Ct. at 2200 (internal citations and quotations
23
    omitted).  However, "a plaintiff's obligation to provide the ground of his entitlement to relief
24
    requires more than labels and conclusions, and a formulaic recitation of the elements of a
25
    cause of action will not do."  Bell Atl. Corp., 127 S. Ct. at 1964-65 (internal citations and
26
    quotations omitted).  Here, Plaintiff's complaint fails to allege even the mere fact that
27

28

1   Defendants publicized the information in question; Plaintiff's recitation of such facts in her

2   Response cannot compensate for this lack.  Plaintiff's liberty interest claim will be dismissed.

3       Given the facts discussed in Plaintiff's Response, the Court assumes Plaintiff may, if

4   given leave of the Court, be able to amend her Complaint to satisfy this deficiency.

5   Accordingly, the Court will address Defendants other arguments on this claim.  First,

6   Defendants argue that Plaintiff's post-termination hearing adequately protected her liberty

7   interest.  In Arnett v. Kennedy, the Supreme Court held that because "liberty is not offended

8   by dismissal from employment itself, but instead by dismissal based upon an unsupported

9   charge which could wrongfully injure the reputation of an employee," "a hearing afforded

10  by administrative appeal procedures after the actual dismissal is a sufficient compliance with

11  the requirements of the Due Process Clause."  416 U.S. 134, 157 (1974).  Plaintiff's CAFT

12  hearing would ordinarily fall squarely in this category.

13      However, Plaintiff alleges that because she was denied the right to call witnesses to

14  address the plagiarism charges leveled against her while the Board relied on separate outside

15  sources, the hearing did not satisfy the requirements of due process.  Defendant notes that

16  the due process standard does not require all proffered evidence to be accepted by the

17  tribunal.  Undoubtedly this is true.  But  Plaintiff alleges in her Complaint that such denial

18  was in service of providing "Plaintiff to the opportunity to [sic] present evidence in her

19  support and to refute the University's claims of alleged plagiarism by excluding Plaintiff's

20  expert. "  There is no allegation that Plaintiff was denied the ability to call *any* witnesses in

21  her defense.[1]  However, "[f]ew rights are more fundamental than that of an accused to present

22  witnesses in his own defense." Taylor v. Illinois, 484 U.S. 400, 408 (1988); see also,

23  Morrissey v. Brewer, 408 U.S. 471, 489 (1972) ("[T]he minimum requirements of due

24  process" in the context of a parole hearing include "opportunity to be heard in person and to

25  present witnesses and documentary evidence."); Samuel v. Holmes, 138 F.3d 173, 178 (5th

26

27      _____

28      [1] Defendants state in their Reply that Plaintiff did, in fact, call a witness on her behalf.

1    Cir. 1998) (Due process rights were violated when a terminated school teacher "was

2    informed of the termination proceedings twenty minutes before the hearing" and "did not

3    have the opportunity to introduce evidence, call witnesses, or contest the accusations against

4    him in any way.").

5          None of the precedents cited discuss a situation in which the plaintiff was denied due

6    process because of exclusion of a single witness and all exist in a context rather different than

7    the present one.  However, nor does legal precedent suggest that the inverse proposition –

8    that refusal to admit the testimony of a single witness can never constitute a violation of due

9    process – is true either.  Given the importance of the right to call witnesses generally, it is

10   inappropriate to decide at this stage that Plaintiff's hearing *must* have been sufficient despite

11   the fact that her expert witness on the subject of plagiarism (and therefore her evidence that

12   her actions did not constitute plagiarism) were excluded.  The matter needs further factual

13   development.

14         Plaintiff does not dispute Defendants' contention that the burden at a name-clearing

15   hearing is on the employee seeking to clear her name.  It appears to the Court as well that

16   this, in fact, correct.  See, e.g., Donato v. Plainview-Old Bethpage Central Sch. Dist., 985

17   F.Supp. 316, 320 (E.D.N.Y. 1997) (finding that because a name-clearing hearing "is to

18   provide the stigmatized employee with an opportunity to 'clear his name,' . . . the employee

19   bears the burden of proof to refute the charges and clear his name.").

20         Finally, Defendants argue that this claim should be dismissed because "whether CAFT

21   was correct in excluding Dr. Wueste's testimony is a matter that is specifically being

22   addressed in [Plaintiff]'s state-court administrative appeal."  This Court is not obligated to

23   abstain from considering a question merely because it is also being considered in a state

24   court.  In fact, as a general matter it may not do so.  See Colo. River Water Conservation

25   Dist. v. United States, 424 U.S. 800, 814, 818 ("Abstention from the exercise of federal

26   jurisdiction is the exception, not the rule."  The "difference in general approach between

27   state-federal concurrent jurisdiction and wholly federal concurrent jurisdiction stems from

28   the virtually unflagging obligation of the federal courts to exercise the jurisdiction given

1   them.").   However, this Court has already decided that it must abstain from enjoining

2   ongoing state enforcement proceedings, of which Plaintiff's appeal from her denial of tenure

3   is one.  (Doc. 46).  Accordingly, insofar as Plaintiff is seeking an injunction to overturn or

4   vacate CAFT's decision or the University's response to it, she may not do so in this Court.[2]

5   This Court need not abstain from consideration of an action for damages.

6                    E.  Plaintiff Pleads a Valid Claim Under 42 U.S.C. § 1985.

7           Section 1985 provides a cause of action for conspiracy to interfere with certain civil

8   rights.  "A claim under section 1985(2), part one, is composed of three essential elements:

9   (1) a conspiracy between two or more persons, (2) to deter a witness by force, intimidation,

10  or threat from attending federal court or testifying freely in a matter there pending, which (3)

11  causes injury to the claimant."  Rutledge v. Arizona Bd. of Regents, 859 F.2d 732, 735 (9th

12  Cir. 1988).  Plaintiff alleges that Defendants violated this section by retaliating against her

13  for her testimony in support of another ASU professor, Joochul Kim, who had filed a civil

14  rights lawsuit against Defendants ABOR and Crow.

15          Defendants first argue that Plaintiff's § 1985 claim fails because she did not allege any

16  class-based animus behind the Individual Defendants' acts.  Plaintiff argues – and this Court

17  agrees – that she clearly alleges racial and gender-based animus on the part of Defendants.

18  In its Reply, Defendants somewhat expand their argument to argue that Plaintiff's

19  "generalized charges are inadequate to support a claim of conspiracy based on racial animus"

20  given the Ninth Circuit's rigorous pleading standard on this manner.

21          "A claim under this section must allege facts to support the allegation that defendants

22  conspired together.   A mere allegation of conspiracy without factual specificity is

23  insufficient."  Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 626 (9th Cir. 1988).

24  Where, for instance, a plaintiff alleged "that several defendants traveled from Washington,

25  D.C., and that they all met or spoke together regarding the formulation of the Special Rules

26

27          [2] And, of course, any claims the Plaintiff has against the Arizona Board of Regents

28  under §§ 1981, 1983, or 1985 have already been dismissed.  (Doc. 51).

1    of Engagement, which contemplated, and in fact led to, Harris's being shot and seriously

2    wounded in violation of the Fourth Amendment," the allegations were sufficient to survive

3    a Motion to Dismiss.  Harris v. Roderick, 126 F.3d 1189, 1200 (9th Cir. 1997).  Courts have

4    not required anything near the specificity required to survive a Motion for Summary

5    Judgment, however.  See, e.g., Johnson v. California, 207 F.3d 650, 656 (9th Cir. 2000)

6    ("[T]he complaint here contains more than a bare allegation of conspiracy, and additional

7    facts in support of the alleged conspiracy may develop as Johnson proceed with discovery

8    on his equal protection claim.").

9         Plaintiff's Complaint contains more than "bare allegations" of conspiracy.  For

10   instance, she details e-mails sent between Defendants – one, from Defendant Brooks to

11   Defendant Reiter was allegedly entitled "RE: Cameron mtg – BINGO! We have a smoking

12   gun" and details the allegations regarding Plaintiff's plagiarism of a course syllabus.  She

13   also alleges that Defendant Reiter specifically requested that Defendant Crow terminate

14   Plaintiff's status as a tenured professor.  And she describes another e-mail from Reiter to

15   Brooks "stating that he had seen Defendant Crow the previous evening and Defendant Crow

16   had asked Defendant Reiter if Plaintiff 'had been moved out of her office yet,'" despite the

17   fact that Plaintiff "had appeal rights to challenge the attempted dismissal which Dr. Cameron

18   had not yet exercised."[3]

19        A demonstration of conspiracy need not be through a showing of a carefully

20   orchestrated plan of which each Defendant had perfect knowledge.  "A defendant's

21   knowledge of and participation in a conspiracy may be inferred from circumstantial evidence

22   and from evidence of the defendant's actions."  Gilbrook v. City of Westminster, 177 F.3d

23   839, 856-57 (9th Cir. 1999) (citing United States v. Calabrese, 825 F.2d 1342, 1348 (9th Cir.

24   ────────────────

25        [3] Defendants' point that Plaintiff "does not (and indeed cannot) allege that ay of the
26   Defendants were in any way involved with the consideration of the charge of plagiarism
     concerning the Caucasian professor . . . ."  Plaintiff needs only allege a conspiracy as to her
27   own treatment and provides allegations that she was not treated reasonably or consistently
     under university policy as support for that; she does not need to allege that Defendants *also*
28   conspired to treat another professor more leniently.

1   1987) (involving a criminal conspiracy)).  Plaintiff has provided such evidence, certainly to

2   a sufficient extent to survive a Motion to Dismiss even given the Ninth Circuit's heightened

3   standard in this area.

4          Defendant also argues that § 1985 cannot be used to redress violations of Title VII and

5   therefore that any claim that Plaintiff was retaliated against for providing testimony in

6   another professor's discrimination lawsuit lacks merit.  Section 1985(3) of the statute

7   provides no substantive rights itself; it merely provides a remedy for violation of the rights

8   it designates." Great Am. Fed. Sav. & Loan Ass'n v. Novotny, 442 U.S. 366, 372  (1979).

9    Defendants are correct  that Title VII cannot underlie a cause of action under § 1985(3); the

10  Supreme Court has found that it would undermine Title VII's statutory scheme. Id. at 376.

11  However, as Plaintiff points out, she has also alleged a violation of 42 U.S.C. § 1981 based

12  on racial discrimination.  Nor does the fact that Plaintiff's § 1985(2) retaliation claim is based

13  on her testimony at another professor's  Title VII claim mean that Plaintiff's own claim is

14  underlied by Title VII.

15                  F.  Plaintiff's Claims Against Defendant Dandekar are Viable.

16         Defendant argues that Defendant Hemelata Dandekar must be dismissed from the

17  lawsuit as Cameron's only allegation against him is that he acted in concert with Reiter and

18  Brooks to orchestrate Cameron's dismissal.  In Plaintiff's Complaint, she alleges that:

19         8. Defendant Dr. Hemalata Dandekar, . . . upon information and belief, at all
           times relevant, held the position of Director of the School of Planning within
20         the College of Design at ASU, and acting in both her individual and/or official
           capacity as alleged herein was involved in one or more decisions affecting
21         Plaintiff's employment status including, but not limited to, decisions regarding
           promotions, transfers, salary, job classification, salary and workplace
22         accommodation.

23  As well as that:

24         17.  In February 2006, Defendant Reiter removed Plaintiff as the course
           instructor of PUP 510, claiming that some students had expressed concerns
25         about Plaintiff's preparedness and structuring of the class to Defendant
           Dandekar.
26
27  Further, Dandekar was allegedly copied on Reiter's e-mail stating that there was "no chance

    [Plaintiff] will teach in [the College of] Planning again."
28

                                          - 13 -

1    Plaintiff's allegation that Dandekar was involved with making decisions regarding her

2  employment status, combined with allegations of Dandekar's specific involvement in passing

3  along student complaints and relevant e-mail chains are sufficient to state a claim.

4    **IT IS SO ORDERED.**

5    DATED this 24th day of April, 2009.

6

7

8

9

10

11                                    _____
                                           Roslyn O. Silver
12                                      United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28